LMS Mgr. LLC v Imir (2024 NY Slip Op 51597(U))

[*1]

LMS Mgr. LLC v Imir

2024 NY Slip Op 51597(U)

Decided on November 20, 2024

Supreme Court, Kings County

Boddie, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 20, 2024
Supreme Court, Kings County

LMS Manager LLC, Plaintiff,

against
Jack Imir, 330 S. RANDOLPHVILLE LLC, 1 RIVERVIEW DRIVE LLC, Defendants.

Index No. 532449/2022

Plaintiff's attorney: Nigyar Alieva of Connell Foley, 56 Livingston Avenue, Roseland, NJ 07068, phone: (973) 840-2350
Defendants' attorney: Candace C. Carponter of The Law Firm of Candace C. Carponter, P.C., 31 Smith Street, Second Floor, Brooklyn, NY 11201, phone: (212) 367-9600

Reginald A. Boddie, J.

The following e-filed papers read herein:NYSCEF Doc Nos.
MS 130-55; 64-69
MS 256-63; 69-75
Plaintiff's motion for partial summary judgment on its first, second, fourth, fifth, and eleventh causes of action and defendants' cross-motion for summary judgment dismissing the instant action are decided as follows:
Background
This action arises from alleged breaches of two commercial lease agreements for warehouse spaces in New Jersey, the first one with defendant 330 S. Randolphville LLC ("330SR") and the second one with defendant 1 Riverview Drive LLC ("1RD"). Plaintiff alleges that defendant Jack Imir ("Imir"), through his companies 330SR and 1RD, induced [*2]plaintiff to enter into long-term leases based on false representations about the premises' suitability and safety, only to abruptly terminate the leases without notice and force plaintiff to relocate repeatedly. Specifically, plaintiff asserts that defendants unilaterally terminated the leases without the required notice, failed to provide properties that met occupancy and safety requirements, and knowingly made false promises to induce LMS to lease the Riverview Premises, despite its non-compliance with building codes and safety requirements. Plaintiff contends that defendants' actions, aimed at maximizing Imir's profits, caused plaintiff severe business disruptions and financial losses.
After the completion of all discovery and the filing of the note of issue on April 12, 2024, plaintiff moves for partial summary judgment on five causes of action: breach of contract against 330SR (first cause of action), breach of contract against 1RD and Imir (second cause of action), breach of the implied covenant of good faith and fair dealing against 1RD and Imir (fourth cause of action), breach of the warranty of quiet enjoyment against 1RD and Imir (fifth cause of action), and negligent misrepresentation against 1RD and Imir (eleventh cause of action).
Plaintiff alleges that in January 2019, it entered into a ten-year commercial lease with 330SR for warehouse space at 330 South Randolphville Road, Piscataway, New Jersey, intended for plaintiff's e-commerce business operations. However, plaintiff claims that 330SR sold the property less than two years into the lease, breaching the lease agreement that requires 330SR to provide 180 days' notice prior to any sale or termination, that Imir, on behalf of 330SR, abruptly informed plaintiff in July 2020 that the property had been sold and ordered LMS to vacate by September 2020. Plaintiff argues that the lack of proper notice forced it to leave without adequate time to secure alternative space, resulting in substantial financial and operational damages, including loss of investments in property improvements and a $38,000 security deposit that 330SR never returned. Plaintiff argues that 330SR's failure to provide the required 180-day notice prior to terminating the lease constitutes a material breach of contract, warranting summary judgment on its first cause of action.
Following the termination of the 330SR lease, plaintiff alleges that Imir, acting on behalf of 1RD, offered plaintiff a replacement lease at another property located at 1 Riverview Drive, Somerset, New Jersey, representing the 1RD property as larger and more suitable for plaintiff's needs, and offered several months of free rent as compensation for the hardship caused by the termination of the 330 lease. Plaintiff claims that it entered into the 1RD lease based on Imir's representations but later discovered significant deficiencies, namely that the property lacked toilets, running water, or adequate electricity, and was later deemed unsafe by the local buildings department, which issued multiple violations. Plaintiff states it was again forced to vacate within two months when local government mandated the immediate removal of all tenants due to imminent safety hazards. Plaintiff alleges that Imir failed to disclose that the property did not meet basic safety codes or have a certificate of occupancy and that his representations about the 1RD property were both false and negligent.
Regarding the 1RD lease, plaintiff contends that Imir and 1RD breached the implied covenant of good faith and fair dealing, which is inherent in every contract, as Imir and 1RD acted in bad faith by leasing the property despite its uninhabitable condition and ongoing code violations, and by continuing to collect rent despite knowing the property was unsuitable for occupation. Additionally, plaintiff claims that defendants breached the warranty of quiet enjoyment, a covenant implied in commercial leases that entitles tenants to peaceful use of the premises without significant interference, given that severe code violations, lack of occupancy [*3]certification, and eventual forced evacuation of the property rendered it substantially unsuitable for business operations. Plaintiff asserts that the conditions at the property, coupled with Imir's failure to disclose or remedy them, amounted to a constructive eviction, further justifying its claim for breach of this implied warranty. Furthermore, plaintiff brings a claim for negligent misrepresentation, alleging that Imir and 1RD negligently provided false information about the 1RD property's condition, ownership, and suitability for occupancy. Plaintiff argues that it justifiably relied on Imir's representations, which led it to sign a lease under the impression that 1RD owned the property and that it was fit for commercial use, only to later discover that 1RD was not a legally established entity at the time of negotiations and that it did not hold title to the 1RD property. 
Defendants oppose and cross-move for summary judgment to dismiss the case entirely, citing waiver of lease termination notice, the absence of a finalized lease for the 1RD property, and the lack of a factual basis for plaintiff's fraud and misrepresentation claims.
First, defendants argue that plaintiff waived any right to a 180-day termination notice for the 330SR lease, as Imir had a conversation with plaintiff's principal, Abraham Lokshin ("Lokshin"), who agreed to vacate without requiring formal notice, as they had a friendly relationship and even discussed future business ventures together. Defendants argue that plaintiff voluntarily vacated the 330SR property in September 2020 and had ample time to remove its property, that text messages between Imir and Lokshin confirmed plaintiff's readiness to vacate by the end of September, and a later message in which Lokshin agreed to pay a $900 charge for removing leftover items.
Secondly, defendants argue that plaintiff's claims regarding the 1RD lease are baseless because there was no finalized or executed lease. While plaintiff claims it signed and delivered the lease to Imir, defendants contend that Imir never received or signed any final version, that lease negotiations were ongoing with several versions exchanged, and that Lokshin even indicated in texts that he wanted to verify conditions at 1RD before finalizing any agreement. Additionally, defendants state that plaintiff never met key lease obligations, such as paying a security deposit of $48,875 or providing proof of insurance and certificates required under New Jersey law. Defendants also allege that plaintiff never paid any rent specifically for 1RD, only continuing to pay rent for the 330SR property during its final month there.
Thirdly, defendants argue that plaintiff's fraud and misrepresentation claims are without merit and lack specificity. Defendants assert that plaintiff was fully aware of 1RD's condition, including limited electricity, no working bathrooms, and a lack of a Certificate of Occupancy, from its first visit in July 2020. Imir asserts that plaintiff agreed to use the space only for storage until the property could be legally prepared for a shipping operation, that it was plaintiff's unauthorized use of the space for shipping that prompted the local buildings department to issue an evacuation order in November 2020, an order which halted the property's use and delayed defendants' efforts to obtain necessary permits, which ultimately led to the building's sale in December 2021.
In opposition to defendants' cross-motion, plaintiff argues that the defendants' opposition and cross-motion should be disregarded as untimely, as defendants obtained three adjournments yet still missed their filing deadline. Plaintiff argues that defendants failed to proffer any evidence creating an issue of fact, specifically concerning breaches of the 330SR lease and the 1RD lease, that defendants merely offered conclusory and unsubstantiated allegations. Plaintiff asserts that defendants' cross-motion improperly attempts to group multiple claims together [*4]without individually addressing them, identifying legal elements, or providing necessary evidentiary support.
Plaintiff reasserts that defendants violated the terms of the 330SR lease by failing to provide the 180-day notice required for lease termination due to property sale, that it incurred $95,000 in expenses to make the premises suitable for business operations and is entitled to recover these costs in addition to the security deposits due to the defendants' breach, that no waiver was ever agreed upon, and that plaintiff never formally vacated the premises. As to the 1RD lease, plaintiff contends that there was a valid lease or at least an implied landlord-tenant relationship based on the negotiation and execution of lease terms, that defendants failed to bring the premises to code or obtain the necessary certificate of occupancy, that defendants negligently misrepresented the condition of 1RD which plaintiff relied upon, leading to financial damages when they could not use the premises. As to the remaining causes of action, plaintiff argues that defendants failed to address the specific elements of each cause of action or provide counter-evidence and failed to proffer any documentary evidence that could raise material issues of fact.
In reply, defendants argue that their filing delay was minimal and was caused by bandwidth issues while defense counsel was on a long-planned cruise overseas with her office closed for the holiday, and that plaintiff's counsel was informed of the delay and did not object to it at the time or request additional time, thus there is no prejudice to plaintiff. Defendants argue that Imir's affidavit provides detailed factual support refuting plaintiff's claims, that plaintiff is not entitled to damages for the alleged breach of 330SR lease as there is no legal precedent of tenant receiving damages simply because a termination notice wasn't served, especially when the tenant voluntarily vacates the premises, and that plaintiff's damages claims are unfounded, as the alleged expenses pertain to relocating from 1RD to Pennsylvania, not from 330SR to 1RD.Defendants reassert that there is no valid lease for 1RD, as Imir never executed the alleged lease and plaintiff never paid a security deposit or rent under the alleged lease. Moreover, defendants argue that plaintiff's fraud and negligent misrepresentation claims are unsupported given the extensive efforts defendants undertook to make 1RD legally compliant for the intended business use, and that plaintiff was fully aware of the property's condition and its limitations. Lastly, defendants argue that plaintiff has failed to proffer any evidence substantiating its claims for unjust enrichment, intentional misconduct, and other causes of action, and such claims therefore should be dismissed.

Discussion
It is well established that summary judgment is granted when "the proponent makes a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact, and the opponent fails to rebut that showing" (Brandy B. v Eden Cent. School Dist., 15 NY3d 297, 302 [2010] [citation omitted]). Once the proponent has made a prima facie showing, the burden then shifts to the motion's opponent to present evidentiary facts in admissible form sufficient to raise a genuine, triable issue of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978]). Upon a motion for summary judgment, the court's function is one of issue finding rather than issue determination (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). "It is not the function of a court . . . to make [*5]credibility determinations or findings of fact, but rather to identify material triable issues of fact (or point to the lack thereof)" (Vega v Restani Constr. Corp., 18 NY3d 499, 505 [2012] [citation omitted]).
"[C]ourts will generally enforce choice-of-law clauses and that contracts should be interpreted so as to effectuate the parties' intent" (Ministers and Missionaries Ben. Bd. v Snow, 26 NY3d 466, 470 [2015] [citations omitted]). Here, both the 330SR lease and the 1RD lease in question contain a "Governing Law" provision, that "[t]his Lease shall be governed by the laws of the State of New Jersey." It is undisputed here that, pursuant to the choice-of-law provisions in the leases, both the 330SR lease and the 1RD lease are governed by New Jersey law.
Motion Untimeliness
The Supreme Court "may entertain a belated but meritorious motion [for summary judgment] in the interest of judicial economy where the opposing party fails to demonstrate prejudice" (Goodman v Gudi, 264 AD2d 758, 758 [2d Dept 1999] [citation omitted]). "While a court can in its discretion accept late papers, CPLR 2214 and 2004 mandate that the delinquent party offer a valid excuse for the delay" (Assoc. First Capital v Crabill, 51 AD3d 1186, 1187 [3d Dept 2008] [citations omitted]). "Additional factors relevant when essentially extending the return day by accepting late papers include, among others, the length of the delay and any prejudice" (id.). When "[t]he delay was minimal (less than one week), there was no showing of prejudice to plaintiff (which availed itself of the additional time and submitted a considerable reply), and a detailed explanation was provided for the delay," and "in light of the preference for resolving cases on their merits," summary judgment papers should be accepted (id.). Indeed, absent a showing of prejudice to the non-moving party for summary judgment, trial courts have the discretion to accept and consider nonmovant's "opposition papers and cross-motion [for summary judgment]" even though they were served "one and two days late" (see Dinnocenzo v Jordache Enterprises Inc., 213 AD2d 219 [1st Dept 1995]). 
Here, the parties' email correspondence provides that October 11, 2024, was the agreed deadline for defendants to file their opposition and cross-motion. Defendants, however, filed on October 15, 2024, four days late. Despite this delay, at no point did plaintiff file a notice of rejection or otherwise indicate that they viewed the filing as improper until raising the timeliness argument in their opposition papers. Instead, plaintiff proceeded to file their opposition and reply papers timely on November 1, 2024, without any indication of prejudice caused by the brief delay. Moreover, defendants provided a valid explanation for the delay, citing technical difficulties and travel constraints.
Given that the delay was brief, that defendants provided a valid explanation, and that plaintiff experienced no prejudice, defendants' motion for summary judgment shall be accepted, and the motion shall be decided on its merits.
Breach of Contract against 330SR (first cause of action)
To prevail on a claim of breach of contract under New Jersey law, a plaintiff must prove "first, that the parties entered into a contract containing certain terms; second, that plaintiffs did what the contract required them to do; third, that defendants did not do what the contract required them to do, defined as a breach of the contract; and fourth, that defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs" (Goldfarb v Solimine, 245 NJ 326, 338, 245 A3d 570, 577 [2021] [citations and internal quotation marks omitted]).
Here, it is undisputed that the parties entered into a valid lease for the 330SR property, which contains a "Sale of Property" provision. Plaintiff has provided documentary evidence demonstrating its compliance with the lease, including payment of rent, security deposit, and adherence to other contractual obligations. The "Sale of Property" provision explicitly requires the landlord to provide the tenant with written notice at least 180 days prior to termination in the event of a sale: "In the event of a sale of the Premises the Lessor shall have the right to terminate this Lease Agreement by submitting written notice to the Lessee. Notice shall be submitted at least 180 days." A separate "Notices" provision further specifies that notices must be addressed to LMS Manager LLC at its leased address.
Despite these clear contractual requirements, defendants failed to provide any written notice of termination 180 days prior to termination in the event of a sale. Defendants' argument that plaintiff waived the notice requirement by voluntarily vacating the property is unsupported by legal authority or evidence. "Waiver is the intentional surrender or abandonment of a known right, operative unilaterally and without regard to reliance by others" (Mattia v N. Ins. Co. of NY, 35 NJ Super 503, 511, 114 A2d 582, 585-86 [NJ Super Ct App Div 1955] [citations and internal quotation marks omitted]). Defendants failed to demonstrate such "intentional surrender or abandonment" from plaintiff. Moreover, defendants failed to cite any case law or statutory authority in either their cross-motion or reply papers to substantiate their waiver argument. Furthermore, the documentary evidence of record demonstrates that plaintiff never conceded or relinquished its right to adequate notice under the lease. Plaintiff consistently objected to the lack of notice, sought compensation for relocation costs and unrecovered investments in the 330SR premises, and only reluctantly agreed to move to 1RD as a mitigation effort to avoid "major penalties" that defendants warned would result if it did not vacate the 330SR premises timely. Accordingly, defendants' failure to provide written notice as required by the 330SR lease constitutes a clear breach of contract.
Additionally, plaintiff has demonstrated damages caused by defendants' breach of contract by producing detailed documentation of relocation costs, which included expenses to move equipment and inventory from the 330SR property to its temporary location, as well as unrecovered investments made to improve the 330SR premises, including receipts and invoices for electrical, shelving, and flooring work required to make the space suitable for business operations. Defendants failed to provide any documentary evidence disputing the amounts. 
Accordingly, plaintiff has met its prima facie burden establishing that defendants breached the lease for the 330SR property, while defendants failed to raise any genuine issue of material fact in opposition. As such, plaintiff's motion for summary judgment on the first cause of action for breach of contract against 330SR is granted.
Breach of Contract against 1RD and Imir (second cause of action)
Regarding the second cause of action for breach of contract against 1RD and Imir, defendants argue that no valid lease for 1RD was ever executed, disputing the existence of an agreement rather than addressing any of the alleged breaches. Defendants contend that Imir never signed the lease, that negotiations of the lease were never finalized, and that plaintiff paid rent amounts different from those listed in the alleged agreement, thus there never was an implied lease either. 
"Absent an express agreement, a landlord-tenant relationship giving rise to a leasehold interest may be implied if a party occupies land under an agreement with the owner to pay rent or the occupancy is accompanied by paying rent" (WA Golf Co., LLC v Armored, Inc., A-2113-[*6]12T2, 2014 WL 3843141, at *3 [NJ Super Ct App Div Aug. 6, 2014] [citations omitted]). "The law will imply a contract to pay rent from the mere fact of occupation, unless the character of the occupancy be such as to negative [stat] the existence of a tenancy" (id.). "Absent a clear articulation of the parties' intention, we look to the circumstances surrounding the making of the relationship and the parties' course of operation" (id.). "In situations where the ambiguity or doubt gives rise to a factual question as to the intention of the parties, the burden is on the party asserting it to demonstrate existence of the lessor-lessee relationship" (id.). 
Here, the evidence of record demonstrates a clear intent by both parties to enter into a lease for 1RD. Text messages and emails exchanged between the parties show that Imir confirmed the lease terms and expressed readiness to move forward with the agreement, while plaintiff made logistical arrangements to occupy the 1RD premises and communicated its readiness to fulfill its obligations under the lease. Plaintiff also provided testimony and evidence demonstrating that it paid rent for 1RD, albeit in amounts differing from the contract's terms. Defendants argue that this discrepancy negates the existence of a lease, but rent discrepancies alone are insufficient to negate a lease when the intent to lease is evident. As noted in Thiokol, "rent is not essential to a lease; for, from favor, or valuable consideration, the tenant may have a lese [stat] without any render" (Thiokol Chem. Corp. v Morris County Bd. of Taxation, supra, at 183 [1964] [citation omitted]). "Yet that must be in a case where a lease was clearly intended" (id.).
Moreover, occupation and payment under an agreement with the property owner are sufficient to establish an implied lease (see WA Golf Co., LLC v Armored, Inc., supra, at *3 [NJ Super Ct App Div Aug. 6, 2014]). Here, plaintiff occupied the 1RD property with defendants' permission and in reliance on their representations. Imir's statements during his deposition further acknowledge the discussions of rent and terms for 1RD, supporting the fact that a lease arrangement was intended by both parties. Defendants' failure to deliver possession of the premises as represented constitutes a clear breach. Plaintiff has further established damages, including costs incurred for relocation and unrecovered investments made to prepare for occupancy of 1RD, with evidence such as invoices and affidavits substantiating these losses. Defendants failed to address the alleged breaches or provide evidence raising triable issues of material fact. Instead, they argued that no lease was executed in the first place. Plaintiff has thus met its burden in establishing the existence of an implied lease, defendants' breach, and damages resulting therefrom. 
Accordingly, plaintiff's motion for summary judgment on its second cause of action for breach of contract against 1RD and Imir is granted.
Breach of the Implied Covenant of Good Faith and Fair Dealing against 1RD and Imir (fourth cause of action)
"It is well settled that an implied covenant of good faith and fair dealing inheres in every contract in New Jersey" (Wilmington Sav. Fund Socy., FSB for Pretium Mtge. Acquisition Tr. v Daw, 469 NJ Super 437, 452 [NJ Super Ct App Div 2021] [citations and internal quotation marks omitted]). "The implied covenant signifies that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (id.). "A party breaches the implied covenant when it exercises its contractual functions arbitrarily, unreasonably, or capricious" and with an improper motive" (id.). "Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance" (id.). 
"A breach of the implied covenant of good faith and fair dealing differs from a literal violation of a contract" (Wade v Kessler Inst., 172 NJ 327, 340-41 [2002] [citations and internal quotation marks omitted). "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term" (id.). However, "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive" (id.).
Here, plaintiff alleges that defendants breached the implied covenant of good faith and fair dealing by failing to deliver the 1RD premises in a habitable condition. While plaintiff has demonstrated defendants' breach of the implied lease, plaintiff has not established, as a matter of law, that defendants exercised their contractual functions arbitrarily, unreasonably, or capriciously, and with an improper motive, which is essential for a finding of bad faith. Material issues of fact remain regarding whether defendants acted with an improper motive, particularly in light of the breaches of the lease and defendants' subsequent remedial efforts. These issues, including whether defendants' conduct was merely negligent or carried an intent to undermine plaintiff's contractual rights, are questions for the jury, and not appropriate for resolution on summary judgment.
Accordingly, plaintiff's motion for summary judgment and defendants' motion for summary judgment dismissing the fourth cause of action for breach of the implied covenant of good faith and fair dealing against 1RD and Imir are both denied.
Breach of the Warranty of Quiet Enjoyment against 1RD and Imir (fifth cause of action)
"[A]ny act or omission of the landlord or of anyone who acts under authority or legal right from the landlord, or of someone having superior title to that of the landlord, which renders the premises substantially unsuitable for the purpose for which they are leased, or which seriously interferes with the beneficial enjoyment of the premises, is a breach of the covenant of quiet enjoyment and constitutes a constructive eviction of the tenant" (Reste Realty Corp. v Cooper, 53 NJ 444, 457 [1969] [citations omitted]).
Here, plaintiff has demonstrated that defendants materially interfered with its quiet enjoyment of the 1RD premises. Plaintiff provided documentary evidence showing it entered into an agreement to lease 1RD for use as a shipping warehouse, with defendants fully aware of this intended use. Despite this knowledge, defendants failed to deliver possession of the premises in a suitable condition, permitting ongoing building violations and unsafe conditions to persist, and ultimately causing the issuance of an evacuation order that prevented plaintiff from utilizing the premises as intended. Additionally, plaintiff presented testimony and documentary evidence establishing that defendants subsequently sold the 1RD property to another party without proper notice, effectively denying plaintiff access to the premises and constructively evicting them. Defendants' actions, including their failure to address building violations or timely obtain a certificate of occupancy and the subsequent sale of the 1RD premises without notice, rendered the premises unsuitable for the agreed-upon purpose and seriously interfered with plaintiff's beneficial enjoyment, constituting a breach of the covenant of quiet enjoyment.
In opposition, defendants focused on asserting that no lease existed but failed to directly address the breach of the warranty of quiet enjoyment claim or raise any triable issues of fact regarding this cause of action. Accordingly, plaintiff's motion for summary judgment on its fifth cause of action for breach of the warranty of quiet enjoyment against 1RD and Imir is granted.
Negligent Misrepresentation against 1RD and Imir (eleventh cause of action)
"To prove a claim of negligent misrepresentation under New Jersey law, the plaintiff must prove (1) the defendant negligently made an incorrect statement; (2) the plaintiff justifiably relied on the defendant's statement; and (3) the plaintiff was injured as a consequence of relying upon that statement" (Pharm. & Healthcare Communications, L.L.C. v Natl. Cas.Co., A-0382-14T3, 2015 WL 10793944, at *4 [NJ Super Ct App Div May 11, 2016] [citations omitted]).
Here, plaintiff has demonstrated that defendants negligently made incorrect statements regarding the condition and suitability of the 1RD premises for use as a shipping warehouse, leading plaintiff to justifiably rely on those representations and incur damages as a result. The evidence of record shows that defendants made several key misrepresentations, including that the 1RD premises would be delivered in a suitable condition for use as a shipping warehouse, and that they would address outstanding building violations and rectify unsafe conditions. Despite these assurances, the premises were not brought into compliance with applicable building codes, and an evacuation order was ultimately issued. Plaintiff relied on these representations by moving its operations to the 1RD property, incurring costs to transport its equipment and inventory and suffering disruption to its business operations. Plaintiff also testified that it relied on defendants' representations that Imir had the legal authority to lease the 1RD premises, which defendants later sold to another party without proper notice, causing further disruption to plaintiff and forcing plaintiff to pay for an alternate warehouse located in a different state. 
Defendants, in opposition, did not directly address the claim of negligent misrepresentation, instead arguing that no lease existed and asserting that plaintiff was aware of the 1RD premises' conditions throughout negotiations. However, these conclusory assertions are contradicted by the documentary evidence and are insufficient to raise triable issues of material fact. Accordingly, plaintiff's motion for summary judgment on its eleventh cause of action for negligent misrepresentation against 1RD and Imir is granted.
The Remainder of Defendant's Motion
Defendants moved for summary judgment seeking dismissal of the entire complaint. However, defendants filed a combined affirmation and memorandum of law without attaching a certificate of compliance, failed to analyze the causes of action individually, and barely cited any case law or legal authorities to substantiate their arguments.
"The existence of an express agreement, whether oral or written, governing a particular subject matter precludes recovery in quasi-contract for events arising out of the same subject matter" (Morales v Grand Cru Assoc., 305 AD2d 647, 647 [2d Dept 2003] [citation omitted])."A cause of action alleging unjust enrichment is a quasi-contract claim, and therefore, is not viable where, as here, it is undisputed that the parties entered into an express agreement" (Woss, LLC v 218 Eckford, LLC, 102 AD3d 860, 862 [2d Dept 2013] [citation omitted]). Here, given that plaintiffs and defendants entered into express agreements concerning the 330SR and the 1RD premises, plaintiff cannot pursue an unjust enrichment claim against defendants. Moreover, the unjust enrichment claim is duplicative of the fraud and breach of contract claims. Accordingly, plaintiff's thirteenth cause of action of unjust enrichment must be dismissed.
Regarding the remaining causes of actions, defendants failed to demonstrate the absence of triable material issues of fact. Without a prima facie showing of entitlement to judgment as a matter of law, defendants' motion for summary judgment on the remaining causes of action must be denied.

Conclusion

Based on the foregoing, plaintiff's motion is granted to the extent that summary judgment on its first, second, fifth, and eleventh causes of action are granted. The remainder of plaintiff's motion is denied. Defendants' cross-motion is granted to the extent that plaintiff's thirteenth cause of action is hereby dismissed. The remainder of defendants' motion is denied. Any arguments not expressly addressed herein was considered and deemed without merit or unnecessary to address given the court's determination.
E N T E R:
Honorable Reginald A. Boddie
Justice, Supreme Court